**SECRETARY OF DEFENSE, Appellant,**

v.

**Le Khac BONG, Appellee.**

**No. 21819.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 9, 1969.

Decided March 3, 1969.

Mr. Roger A. Pauley, Attorney, Department of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Nathan Dodell, Asst. U. S Attys., were on the brief, for appellant. Messrs. Joseph M. Hannon and Lawrence Lippe, Asst. U. S. Attys., also entered appearances for appellant.

Mr. David Carliner, Washington, D. C., for appellee.

Before WRIGHT, TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Mr. Bong, plaintiff in the District Court and appellee in this court, is a native and citizen of South Vietnam. He was admitted to the United States in September, 1960, to study towards an advanced degree in the field of education. His visit was sponsored by the Agency for International Development (AID) pursuant to the U.S. Information and Cultural Exchange Act of 1948, 62 Stat. 6, as amended, 22 U.S.C. § 2451 et seq. (1964) (Cultural Exchange Act). It was understood at that time that upon completing 'his course of studies here Mr. Bong would return to South Vietnam to teach English. In 1963, after Columbia University Teachers' College dropped him from its enrollment because of unsatisfactory work, appellee obtained employment with the Department of State Foreign Service, and later with the Department of the Army's Defense Language Institute (DLI), a division of the Department of Defense (DOD).

Upon termination of his studies appellee lost his nonimmigrant status [1] and it became necessary to apply for an immigrant's visa. However, he was ineligible for such a visa until the expiration of two years following departure from the United States after expiration of his exchange visitor status, in view of section 212 of the Immigration and Nationality Act.[2]

Mr. Bong applied to the Immigration and Naturalization Service for a waiver of section 212 requirements on the grounds of exceptional hardship. His application was rejected on August 16, 1965, and December 26, 1965, was set as a voluntary departure date. When the DLI learned of appellee's situation,[3] Dr. Chen, Chairman of its Far Eastern Division, notified its administrative office that he would like to retain Mr. Bong in the department, and Captain Greinwald of DLI's East Coast Branch contacted the Staff Civilian Personnel Division to "take the necessary steps" so that DLI could retain Mr. Bong. Section 212(e) provides (see footnote 2) that a waiver of its two year residence requirement may be obtained if the Attorney General

---

1. When appellee lost his status under § 212 of the Immigration Act, see note 2, *infra*, he no longer qualified as a non-quota immigrant under 8 U.S.C. § 1101 (a) (15) (J) and became subject to the requirements for obtaining a visa that apply to aliens who do not fall into a special category. *See, e.g.*, 8 U.S.C. § 1101(a)(15)(27) (1964), as amended (Supp. III, 1968).

2. 8 U.S.C. § 1182(e):
    No person admitted * * * [who acquired exchange visitor status under the Cultural Exchange Act of 1948] shall be eligible to apply for an immigrant visa, or for permanent residence, or for a nonimmigrant visa under section 1101(a)(15)(H) of this title until it is established that such person has resided and been physically present in the country of his nationality or his last residence, or in another foreign country for an aggregate of at least two years following departure from the United States: * * * 8 U.S.C. § 1182(e) (1964).

3. Appellee did not notify the DLI of his status before obtaining his position. Apparently the Institute had failed to check with the Director of Defense Research and Engineering before hiring plaintiff Bong.

finds, "upon the favorable recommendation of the Secretary of State pursuant, to the request of an interested United States Government Agency," that it is in the "public interest." 8 U.S.C. § 1182 (e).

After taking up the matter with other concerned governmental agencies the Office of the Director of Defense Research and Engineering (ODDR&E), the division responsible for processing departmental applications for waiver, declined to recommend pursuing request for a waiver. Appellee's counsel protested the decision as "egregiously indefensible" and urged the Office of the Secretary of Defense to reconsider. The Department notified appellee's counsel that the decision was "reluctantly reached after a careful assessment of all relevant factors," and that the Department would defer to AID and the Vietnamese Embassy, both of which opposed granting a waiver.[4]

Appellee thereafter commenced an action in the District Court for a declaratory judgment directing the Secretary of Defense to exercise his independent discretion "whether to pursue waiver procedures." The Government moved to dismiss the complaint for lack of jurisdiction, and in the alternative for summary judgment. The District Court denied both motions, and this court granted permission for this interlocutory appeal, see 28 U.S.C. § 1292(b) (1964).

The Government urges that the action of the Defense Department in not requesting a waiver is non-reviewable as a "matter committed to agency discretion by law." See section 10 of the Administrative Procedure Act, 5 U.S.C. § 701 (Supp. III, 1968). It is argued in the alternative that the matters before us are subject only to narrow, limited review, restricted to the question of whether the Department acted in accordance with the proper legal standard. Appellee contends that the decision to request

a waiver is not beyond judicial scrutiny, and that the Department erroneously failed to exercise its discretion by deferring to the views of AID.

We need not rule on the broad contentions as we think it plain that the Defense Department exercised its discretion in a manner compatible with its obligations under section 212 and in accordance with sound principles of government administration.

I

■ Appellee's complaint is in essence an attack on departmental regulations that establish the guidelines for the determination of when to request waiver on behalf of an exchange visitor employee. Defense regulations provide in pertinent part:

\* \* \* Each waiver request will be individually and strictly evaluated in terms of the following considerations and standards:

1. *High priority character of the program or activity involved.* [Paragraph omitted.]

2. *Essential relationship of the exchange visitor to the program.* [Paragraph omitted.]

3. *Critical qualifications of the exchange applicant.* [Paragraph omitted.]

4. *Need for special clearance for person on an official Exchange Program of the U.S. Government.* In the case of an exchange visitor who came to the United States on an official Exchange Program of the U.S. Government, the documentary evidence should include information on satisfactory clearance with the sponsoring agency. \* \* \*

5. *Relevance of other factors.* Consideration of waiver requests is not restricted to the professional aspects of the exchange visitor's present or potential contribution to programs of offi-

---

4. General Ely noted in his letter to counsel that both an Interagency Agreement, Foreign Affairs Circular No. 292, to which the Defense Department had sub-

scribed, and "defense policy" required concurrence of the sponsoring Federal Agency to a waiver request.

cial defense interest. Other relevant facts concerning the exchange visitor's non-immigrant status, his commitment to return home, the attitude of his government, and the prospects for making effective use of his knowledge and capabilities acquired in the United States will be taken into account.

To similar effect is the Interagency Policy on *The Return of Participants in Exchange Visitor Programs* to which DOD is a signatory. These regulations, it is contended, bind the Defense Department to abide by considerations of foreign relations which the Department of State, and not the "interested agency" should take into account.[5]

█ It is clear that neither the DOD regulations nor the Interagency Agreement *require* the Department of Defense, as an "interested agency" making application for continued presence of an exchange visitor, to respect the position of the sponsoring agency which originally brought in the exchange visitor, and that the Department may proceed without its concurrence.[6] The regulations and the Interagency Agreement include consultation with a sponsoring agency as only *one* aspect of the decision-making process. Neither document requires a department to abandon its pursuit of waiver for an exchange visitor if it has a *com-*

*pelling* need for his services. Thus, the issue is whether an "interested agency" *may* informally consult and take into account the views of other concerned departments in deciding whether or not to submit a formal waiver request to the Department of State.

The announced purpose of the Cultural Exchange Act is to afford aliens an opportunity to visit the United States and acquire skills that would be useful in their homelands. *See* 22 U.S.C. § 2451. To the extent that a visiting exchangee does not return to his native land a major policy of the Act is undercut. Congress sought to secure its objectives by adopting the requirements of § 212. The waiver procedures were included for the purpose of permitting a government department to retain critical personnel. But there are degrees of need. Any competent employee is an asset to any organization. Yet short of a finding of irreplaceability a department may responsibly decide not to press the matter of waiver.

A bureau considering whether to make application as an "interested agency" for extension of the stay of an exchange visitor, as in the "public interest," is not required to act solely on the basis of its own needs. We may assume that it may not properly delegate to another agency

5. The State Department's published regulations implementing § 212 provide that waiver requests by "interested agencies" should be channeled through its office. 22 C.F.R. §§ 63.6(d) and (e), 63.7 (1968).

63.6(d). A request for a waiver submitted by any agency of the United States Government to the Secretary for his recommendation shall * * * state the reason or reasons why the waiver is being requested; and be accompanied by the report of the sponsor or sponsors of his application. [Sponsor here means "interested agency."]

(e) The request must be supported by documentary evidence demonstrating that issuance of the waiver is in the public interest because the two-year period of residence abroad would * * * be clearly detrimental to a program or activity of official interest to an agency. * * *

* * * * *

63.7. Upon receipt of a request from an interested * * * agency * * * the Secretary shall review the policy, program, and foreign relations aspects of the case and in appropriate instances shall transmit his recommendation to the Attorney General for the latter's finding and consequent action.

6. Paragraph 6–c–(2)–(a) of the Interagency Agreement provides:

In the case of an Exchange Visitor who came to the United States on an official Exchange Visitor Program of the U.S. Government, the application should include evidence that the sponsoring Federal Agency has agreed to the application being made, *or if it did not agree*, the grounds on which it declined to do so. (Emphasis added.)

the decision whether or not to apply. But certainly it may make its own decision whether or not to apply by appraising its own need in light of the views and comments of other concerned agencies. Comity among departments of government is desirable. One branch of an organization should try to accommodate another division's personnel needs rather than enter into a dispute that has to be reconciled by a supervising department. Departmental clashes are wasteful of resources and time.[7]

It is clear from the exhibits that the Defense Department considered the possibility of requesting a waiver. It undertook to assess its own need for appellee's services. Dr. Chen, Chairman of DLI's Far East Division, felt that appellee was "qualified" and asserted a need for his "invaluable services," but there was no representation that Mr. Bong was irreplaceable. Indeed, a department memorandum indicates that there were replacement applicants waiting to be tested for Bong's job.

■ In our view appellant Department is entitled to summary judgment. The only issue on the merits is whether the Department of Defense failed to fulfill its statutory obligations under § 212 by consulting other agencies. We reject the contention that the Department was not entitled to solicit the views of other concerned Federal agencies and defer to them as it saw fit.[8] We also reject the contention that DOD abdicated from its own evaluation. There is nothing before us to rebut the presumption of regularity. Indeed it is the uncontroverted fact that ODDR&E explored the desirability of requesting a waiver. The Department has offered General Ely's statement that it considered all the relevant factors and decided "only with reluctance" not to pursue waiver. All appellee can prove is the fact that the Department did not deem its need for Mr. Bong's services as overriding.[9] This does not entitle appellee to relief.

---

7. The decision to pursue a waiver request means that the Department must be prepared to present and defend its case for retaining an employee. An agency may well decide not to expend time and effort to retain noncritical personnel when it knows that it must be ready to meet opposition from other departments with numerous claims for the services of an exchange visitor.

8. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), lends no support to appellee. Plaintiff-appellant there sought suspension of a deportation order. In his habeas corpus application he alleged that the Board of Immigration Appeals "prejudged [him] through the issuance by the Attorney General in 1952, prior to the Board's decision, of a confidential list of 'unsavory characters' including petitioner's [Accardi's] name, which made it impossible for him 'to secure fair consideration of his case.'" 347 U.S. at 262, 74 S.Ct. at 500. The Court held that under the applicable regulations, having the force of law, the Attorney General had conferred on the appeals board his discretion to review deportation orders, and that Accardi was entitled to an independent determination by the Board, according to the Attorney

General's own rules. Having charged the Board to make an initial determination, the Attorney General could not usurp its discretion by dictating the outcome of Accardi's case. 347 U.S. at 267, 74 S.Ct. 499. Since Defense was not bound to defer to AID or any other agency, we do not have before us a case where discretion was usurped.

Appellee also cites regulations of the Department of Health, Education and Welfare, which do not call for consultation with other federal agencies before deciding whether to submit a waiver request to the Secretary of State. We have no occasion to say whether such consultation is not necessary, but only that it is not forbidden.

9. General Ely's letter to Mr. Carliner, appellee's attorney, demonstrates that ODDR&E reached its decision by balancing the Department's need for Mr. Bong against the desire of AID and the Viet Nam Embassy to expedite Bong's return. It stated:

Both in our original waiver review requested by the Defense Language Institute and in the current re-assessment of the merits of a waiver in response to your letter, we find that AID, the Department of State and the Viet Namese Government stand firmly

The order of the District Court will be reversed and that Court is directed to enter judgment in accordance with this opinion.[10]

So ordered.

opposed to a waiver on program, policy and foreign relations grounds. If Viet Nam needs Mr. Lekhac's services in a military or civilian capacity in support of Joint U.S.-Viet Nam objectives in Viet Nam, in our judgment this requirement must take precedence over Department of Defense needs for his language instruction services here. JA 43.

The Defense Department's flexible attitude and willingness to defer to the Viet Namese Embassy and AID is particularly understandable in view of the Department's shared responsibility for both the military and political programs in Viet Nam. At a time when it is the joint policy of the United States and Viet Nam to increase the self-sufficiency of that nation, it might sensibly be deemed contrary to the overall interest even of the Defense Department, considered apart, to claim the services of one vitally needed in Viet Nam in the absence of a genuinely crucial need for his services in the United States.

10. Overseas Media Corp. v. McNamara, 128 U.S.App.D.C. 48, 385 F.2d 308 (1968), cited by appellee, does not call for a contrary result. *Overseas Media* reversed a summary judgment granted on the grounds that the Defense Department's action in refusing to permit distribution of plaintiff's newspaper at post exchange newsstands in Viet Nam was nonreviewable. The issue on appeal was whether

* * * the Secretary of Defense, purportedly acting without reference to established criteria, [had the] power, insulated from judicial review, to deny to appellants access to post exchange newsstands in the Far East when it is alleged that he has granted such access to similarly situated publishers? 128 U.S.App.D.C. at 53-54, 385 F.2d at 313-314.

Moreover, appellant's prayer for relief requested a judgment:

Declaring that the banning of the Overseas Weekly from distribution facilities * * * was * * * arbitrary and capricious and hence was an abuse of discretion. 128 U.S.App. D.C. at 53, n. 6, 385 F.2d at 313, n. 6.

The Court remanded so that it could be ascertained what, if any standards were applied to appellant's request. In the case before us appellee's claim is that the standards avowedly applied were erroneous. JA. 6.